MERI-MINE M. LUTU, a minor, by and through her Guardians Ad Litem, SMITTY S. SU'ESU'E LUTU and MUAITOFIGA F. LUTU, Plaintiffs

v.

AMERICAN SAMOA GOVERNMENT and LILIA TAUGAVAU, Defendants

High Court of American Samoa
Trial Division

CA No. 159-87

February 23, 1988

61

Before REES, Chief Justice, LUALEMAGA, Associate
Judge, and VAIVAO, Associate Judge.

Counsel: For Plaintiffs, John Ward
 For Defendants, Martin Yerick, Assistant
 Attorney General

On Motion to Dismiss:

 In 1984 Meri-Mine Lutu was struck by what we
assume for the purposes of this motion was a school
bus driven by an employee of the American Samoa
Government. Almost three years later Miss Lutu, a
minor, filed a claim with the Attorney General
through her parents. The Attorney General denied
the claim, citing the statutory two-year limitation
on commencing a tort action against the government.
Miss Lutu then brought this action against the
Government and the bus driver.

 Reiterating its view that the action is too
late, the Government has moved to dismiss. In the
alternative the Government urges that the bus
driver is not a proper party defendant.

62

## I. The Statute of Limitations

Defendants argue that the territorial Government Tort Liability Act, A.S.C.A. § 43.1201 et seq. (hereinafter "GTLA") strictly confines the limitation period on tort actions against the Government to two years.[1]

Plaintiffs rely on another section of the Code which provides in pertinent part that a minor "shall have 1 year from after the termination of such disability within which to commence any action regardless of any otherwise applicable limitation period." A.S.C.A. § 43.0126 (emphasis added). Since Meri-Mine is still a minor, they argue, the statute of limitations has not even begun to run.[2] Defendants contend, however, that this section does not apply to tort claims against the Government. They rely principally on federal cases holding that a provision of the United States Code affording

---

[1] A.S.C.A. § 43.1204, the section of the GTLA relied upon by the government, provides:

A tort claim against the government shall be forever barred unless an action on it is begun within 2 years after the claim accrues.

[2] Since a minor is no longer prohibited from bringing suit once a guardian ad litem has been appointed for him, and since Meri-Mine's parents were appointed her guardians ad litem on December 18, 1987, it would seem that the statute of limitations in this case began to run on that date at the very latest. Since the guardians filed suit on the day they were appointed, we need not reach the question whether a claim by a minor for whom a guardian had been appointed would be barred if it were brought more than one year after the appointment.

similar protection to minors[3] does not toll the two-year statute of limitations applicable to tort claims against the federal government.[4] Since the GTLA was modeled on the Federal Tort Claims Act, and since the federal decisions uniformly regard the federal two-year limitation as absolute and unaffected by the provision tolling limitation periods during disability, the government contends that the American Samoa statutes should be similarly interpreted.

It is true that the federal courts require a tort action against the United States to be brought within two years even if the claimant is under a legal disability such as minority. See, e.g., Simon v. United States, 244 F.2d 703 (5th Cir. 1957); Pittman v. United States, 341 F.2d 739 (9th Cir. 1965); United States v. Glenn, 231 F.2d 884 (9th Cir. 1956). The cases generally rely on the principle that a sovereign government need not subject itself to suit at all. When it acts to waive its immunity and consents to be sued in tort, and when the statute creating the right to sue clearly imposes a time limit, then a party advancing a claim under that statute must comply

_____

[3]. U.S.C. § 2401(a) provides:

Every civil action commenced against the United States shall be barred unless the complaint is filed within six years after the right of action first accrues. The action of any person under legal disability or beyond the seas at the time the claim accrues may be commenced within three years after the disability ceases.

[4] The statute of limitations for tort claims against the federal government is contained in U.S.C. § 2401(b), which provides in pertinent part:

A tort claim against the United States shall be forever barred unless it is presented in writing to the appropriate Federal agency within two years after such claim accrues . . . .

64

strictly with its terms, including the time limit. See _Simon_, _supra_, 244 F.2d at 704-06. The courts regard it as clear from the language and history of the federal provisions that Congress was especially wary of having to defend stale tort claims. See _Pittman_, _supra_, 341 F.2d at 741-42. Therefore the two-year limitation on tort claims in 28 U.S.C. § 2401(b) must be construed as an exception to the rule provided by 28 U.S.C. § 2401(a) tolling the limitation period in the case of a minor plaintiff. _Pittman_, 341 F.2d at 740-41; _Simon_, 244 F.2d at 704-05.

The _Glenn_ court reached the same conclusion a little differently. Aside from the general tendency of sovereign governments not to issue broad waivers of immunity, it found no particular evidence of congressional intent one way or the other on the question whether the limitation on tort claims should run against a legally disabled claimant. The court noted that § 2401(a), creating a six-year general statute of limitations for claims against the government and suspending it for legally disabled persons, and § 2401(b), creating a two-year limitation on tort claims and containing no tolling words to cover disabilities, were incorporated into the United States Code from two earlier statutes. The statute that was the source for § 2401(a) included a disabilities exception; the source of § 2401(b) did not. As enacted, the two subsections of § 2401 provide two different rules: a general rule for non-tort suits against the government and a special and different rule for tort claims. In the absence of evidence in the language or history of the statute that the disability exception of § 2401(a) was meant to apply also to § 2401(b), the former must be read as having nothing to do with the latter. _Glenn_, 231 F.2d at 886-87.

Neither the reasoning of _Simon_ and _Pittman_ nor that of _Glenn_ suggests a similar result in American Samoa. Indeed, the best inference that can be drawn from the structure and relationship of the two American Samoa statutes is exactly the opposite of the inference drawn by the _Glenn_ court from the structure and relationship of the two federal provisions. The federal law says to those who might wish to sue the federal government:

(1) You have six years to bring your action, unless you are a minor or

65

otherwise legally disabled in which case
you have three years after the disability
ends.

(2) If the action is a tort action
you have only two years.

See 28 U.S.C. § 2401(a), reprinted in note 3 supra;
id. § 2401(b), reprinted in pertinent part in note
4 supra. The American Samoa Code, on the other
hand, says the following:

(1) You have two years to bring a tort
claim.

(2) If you are a minor or insane you
have 1 year after the disability ends to
bring any action, regardless of how long
you would have if you were not so
disabled.

(3) You have one year to bring a
tort claim against the government.

See A.S.C.A. §§ 43.0120, 43.0126, 43.1204.

The American Samoa statutes, in other words,
are importantly different from the federal
provisions in their language, their structure, and
their apparent relation to one another. The
federal statutes of limitation comprise two
subsections of a single section, 28 U.S.C. § 2401.
The two subsections appear to state different rules
for different kinds of cases. The first subsection
states a rule and immediately announces an
exception for minors; the second subsection states
a somewhat different rule and announces no such
exception. This strongly implies that the
exception applies to the former but not to the
latter. See Glenn, supra, 231 F.2d at 886. In
contrast, the exception for minors in American
Samoa does not appear to have been intended only as
a proviso or caveat to some particular statute of
limitations. It is contained in a separate section
of the Code and expressly announces its application
to "any" action, regardless of "any" statute of
limitations that would otherwise apply. A.S.C.A. §
43.0126.

In light of the differences in language and
structure between the federal and territorial
statutes, it would be most inappropriate to

66

disregard the clear language of the latter on the basis of evidence (or judicial assumptions) about the intentions of Congress in enacting the former. The Simon and Pittman courts found that the dominant intention of Congress (or, more accurately, of the various Congresses that enacted and revised the various parts of 28 U.S.C. § 2401) was to ensure that the federal government would not have to defend stale claims. While the Fono seems to have shared this concern when it enacted the one-year limitation in the GTLA, it is not at all clear that this concern superseded all others. If anything, the strongest statement of legislative purpose that emerges from a study of the territorial statutes is the special solicitude for minors and insane persons reflected in the sweeping language of A.S.C.A. § 43.0126.

In any case, unlike a court construing the federal statutes of limitations we are not faced with the need to resolve a textual ambiguity or conflict by designating one of several competing legislative purposes as the dominant one. The American Samoa statutes are not ambiguous: the statute relied on by the government clearly establishes a one-year statute of limitations, and the statute relied on by the plaintiffs just as clearly makes an exception to "any" statute of limitations. No conflict between the statutes is visible to the naked eye: one states a rule, the other an exception to all such rules. The effect of introducing evidence that there was at least one statute of limitations to which the Fono did not really mean the exception for minors to apply--- or that when the Fono enacted the GTLA it implicitly changed its mind about the general exception for minors, and would have enacted an explicit exception to the exception if anyone had thought about it --- would be to supply ambiguity rather than to resolve it.

Reasonable people can differ on how a court should decide a case in which clear evidence of legislative intent clashes with what would otherwise be the apparent meaning of the text. This is not such a case: we are aware of no particular evidence about what the Fono actually did intend when it enacted any of the statutes at issue in this case. Rather, we are asked to deduce such an intention from a chain of assumptions and inferences to the effect that in enacting the various statutes at issue in this case the Fono

67

intended (or, to be precise, "dominantly" intended; or, to be more precise, would have "dominantly" intended if anyone had adverted to the question) what the federal courts have decided Congress must have "dominantly" intended when it enacted a somewhat different set of statutes. We think it more consistent with the respect due a co-ordinate branch of government to assume that the Fono really did mean to exempt minors from "any" statute of limitations; and that it would have known how to amend this rule if it had meant to do so when it enacted the GTLA.

## II. The Bus Driver

The government has also moved the Court to strike Silia Taugavau, the bus driver, as a party defendant. The motion is based upon two sections of the GTLA which together, according to the government, prohibit suit against an individual ASG employee when the claimant is proceeding under the GTLA. Two earlier decisions of this Court do imply that an individual employee can never be a defendant in a GTLA lawsuit in which the Government is also a defendant. _Aga v. American Samoa Government,_ 3 A.S.R.2d 130 (1986); _Moananu v. American Samoa Government_, CA No. 133-85 (Decision and Order on Motion to Dismiss, November 12, 1986) (obiter dictum).

We are persuaded, however, that these decisions incorrectly apply the GTLA sections at issue. Rather, we believe the Court's contrary holding in _Tevaseu v. American Samoa Government_, 5 A.S.R.2d 10 (CA No. 88-87, July 8, 1987), correctly construed these two sections, which provide as follows:

> The judgment in an action, or the payment of a claim by the Attorney General, under this chapter shall constitute a complete bar to any action by the claimant, by reason of the same subject matter, against the employee of the government whose act or omission gave rise to the claim.

A.S.C.A § 43.1207.

> (a) The remedy by suit against the government as provided by this chapter for damage to or loss of property, or personal injury or death caused by the negligent or

68

> wrongful act or omission of any employee of the government while acting within the scope of his office or employment, shall hereafter be exclusive of any other civil action or proceeding by reason of the same subject matter against the employee whose act or omission gave rise to the claim, or his estate.

A.S.C.A. § 43.1211(a).

Under A.S.C.A. § 43.1207, a judgment against the ASG precludes a later claim against the responsible employee based on the same transaction. This merely prohibits a claimant from recovering twice, not from suing the employee in the first place. See Henderson v. Bluemink, 511 F.2d 399, 404 (D.C. Cir. 1974) (construing an identical federal provision). With A.S.C.A. § 43.1211(a) the Fono has cloaked ASG employees with full immunity from personal liability for the consequences of wrongful acts committed within the scope of their employment. The government is therefore correct to argue that an individual government employee cannot remain a defendant once it is established that the wrongful conduct underlying the claim was committed within the scope of his employment. Unless and until that is established, however, suit against the employee is fully available and nothing in § 43.1211(a) suggests otherwise. (In fact, § 43.1211(b) requires the Attorney General to represent the employee under these circumstances.)

The government may wish to show that Silia Taugavau was acting without the scope of his employment when the accident with Ms. Lutu took place. In that case, Taugavau would remain an appropriate defendant. Alternatively, the government may be willing to stipulate that Taugavau was acting within the scope of his employment. Then and only then should he be stricken as a defendant.

The government's motion is denied.