# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

———————

No. 08-3645

———————

Charles Thomas Sell,                    *
                                        *
            Appellant,                  *
                                        *   Appeal from the United States
    v.                                  *   District Court for the
                                        *   Eastern District of Missouri.
United States of America Department     *
of Justice,                             *
                                        *
            Appellee.                   *

———————

Submitted:  September 21, 2009
Filed:  November 6, 2009

———————

Before WOLLMAN, HANSEN, and SHEPHERD, Circuit Judges.

———————

WOLLMAN, Circuit Judge.

Charles Thomas Sell sued the United States, alleging that he had been the victim of medical malpractice that occurred while he was in federal custody awaiting trial.  The district court[1] dismissed the case with prejudice as barred by the two-year statute of limitations for claims under the Federal Tort Claims Act (FTCA), 28 U.S.C. §§ 2671-2680.  Sell appeals, arguing that the district court erred because the statute

———————

[1]The Honorable Rodney W. Sippel, United States District Judge for the Eastern District of Missouri.

of limitations was tolled as a result of the medical malpractice, and, in the alternative, that his cause of action did not accrue until the tortious treatment ended under the continuous treatment doctrine. We affirm.

## I.

Sell has suffered from mental illness for more than twenty-five years. While awaiting trial for health care fraud, Sell was in federal custody from April 1999 to April 2005. During this time, he refused medication intended to make him competent to stand trial. On the basis of the record before it, the Supreme Court ruled that the government could not forcibly medicate Sell solely for the purpose of rendering him competent to stand trial. Sell v. United States, 539 U.S. 166 (2003). While in federal custody, Sell repeatedly requested independent review of his medical records, and he was examined by his own physician in July 1999, September 2000, February 2003, November 2003, early May 2004, late May 2004, and November 2004.

In May 2004, Sell was transferred from the United States Medical Center for Federal Prisoners (Medical Center) to the St. Louis County Justice Center (Justice Center), an independent contractor of prison services. When Sell was transferred to the Justice Center, officials at the Medical Center prepared and transmitted a "Medical Summary of Federal Prisoner / Alien In-Transit Form" (medical summary). The medical summary noted Sell's mental and physical illnesses and prescribed three medications to be continued indefinitely at the Justice Center until Sell was re-evaluated by a physician. Sell was examined by a physician at the Justice Center in July 2004, but did not see a psychiatrist until November 2004. Sell was put on a new treatment plan on November 19, 2004, which included an additional medication.

On September 7, 2006, Sell filed an administrative tort claim with the Bureau of Prisons alleging that his illness had worsened because of deficient medical treatment while in federal custody. The Bureau of Prisons denied Sell's complaint,

and he filed this case in federal court. The district court ruled that Sell's claim was time-barred by the two-year statute of limitations for FTCA claims. The court determined that the statute was not tolled by reason of Sell's mental illness. The court also rejected Sell's continuous treatment doctrine argument, finding that his cause of action accrued before his transfer to the Justice Center.

## II.

### A.

Sell argues that the statute of limitations was tolled while he was at the Medical Center because the government's medical malpractice made him unable to discover the nature and cause of his injury. He asserts that his claim accrued in November 2004, at the earliest, when he supposedly became aware of the nature and cause of his injury after being examined by his psychiatrist, Dr. C. Robert Cloninger. Generally, a cause of action accrues under the FTCA when a plaintiff is injured. United States v. Kubrick, 444 U.S. 111, 120 (1979). In medical malpractice cases, however, the cause of action accrues when the plaintiff discovers the nature and cause of his injury. Id. at 123-24. Once the cause of action accrues, the plaintiff has two years to file his claim under the FTCA. 28 U.S.C. § 2401(b). "Although the choice of the appropriate rule for determining when a claim accrues is a matter of law, a district court's findings on the application of that rule are findings of fact and will not be disturbed unless clearly erroneous." Brazzell v. United States, 788 F.2d 1352, 1355 (8th Cir. 1986).

Sell asserts that the district court erred by focusing on his mental illness rather than on the government's alleged role in worsening his condition. He cites Clifford ex rel. Clifford v. United States for the proposition that the statute of limitations in a FTCA case tolls when the government's negligence makes a plaintiff unaware of the nature and cause of his injury. 738 F.2d 977, 980 (8th Cir. 1984). Clifford involved a patient in a persistent vegetative state because of an overdose arguably caused by the

government's negligence. Id. at 978. We held that the statute was tolled until a guardian was appointed to represent the plaintiff's interests, under the theory that the government should not profit from its own wrongdoing. Id. at 980. Our holding dealt "only with that rare situation where the alleged malpractice itself (and not some preexisting mental condition unconnected with the government) has prevented the claimant from ever obtaining [] knowledge" of his injury. Id. Clifford does not stand for the principle that any negligence by the government tolls the statute. A government-induced illness tolls the statute only if it prevents discovery of the nature and cause of the injury. Id. at 979-80. If the illness does not prevent discovery, the government's negligence will not do so on its own. Id. In this case, the district court did not find that Sell's illness prevented discovery of his injury. Thus, the holding in Clifford is inapplicable.

There are also important factual differences between Clifford and Sell's case. First, Sell's condition was not similar to a plaintiff in a persistent coma suddenly induced by the government's actions. As a former provider of medical services himself, Sell repeatedly interacted with his own doctor while litigating his treatment plan. Second, unlike the plaintiff in Clifford, Sell had a preexisting mental condition unconnected with the government's actions that may have affected his ability to know the nature and cause of his injury. He suffered from a delusional disorder when he entered the Medical Center in 1999, and he suffered from this same illness when he left in 2005. Third, Sell had a hand in his medical treatment, and if that treatment rendered him unable to recognize his cause of action (a claim which we reject), then he bears part of the blame. Tolling is an equitable remedy that is applied when the plaintiff is blameless, Wilson ex rel. Wilson v. Gunn, 403 F.3d 524, 526 (8th Cir. 2005), and thus it is not appropriate in this case.[2]

_____

[2]Sell also cites Washington v. United States, 769 F.2d 1436 (9th Cir. 1985), and Simmons v. United States, 805 F.2d 1363 (9th Cir. 1986), but neither is controlling or persuasive. Washington dealt with a plaintiff in a persistent coma arguably due to the government's negligence and is inapposite for the same reasons as Clifford. 769

Sell also contends that Brazzell is apposite. In Brazzell we tolled the statute for a plaintiff suffering from a unique case of myalgia and depression induced by a government-recommended vaccination. 788 F.2d at 1357. We tolled the statute until the plaintiff's doctor determined with a reasonable degree of medical certainty that the vaccine had caused her illness; it would have been unfair to the plaintiff, given her lack of knowledge of the cause of her injury, for her claim to accrue earlier. Id. at 1356-57. Unlike the plaintiff in Brazzell, who suffered from a sudden illness with an undiscovered cause, Sell has suffered from mental illness for more than twenty-five years, and he was diagnosed with a delusional disorder as early as 1999. His illness was neither unique nor obscure. While in federal custody awaiting trial, Sell was repeatedly seen by his own physician. He was aware of his mental illness, cognizant of the treatment plan he was receiving, and able to articulate his objections to this treatment. He had the knowledge and wherewithal to bring a claim under the FTCA before his transfer to the Justice Center.

For these reasons, we agree with the district court's determination that the statute of limitations did not toll.

B.

In the alternative, Sell argues that, under the continuous treatment doctrine, his cause of action did not accrue until he received a new treatment plan at the Justice Center on November 19, 2004. Under this exception, a cause of action accrues when

_____

F.2d at 1437. In Simmons, the Ninth Circuit upheld a district court ruling permitting a belated tort claim to proceed. Id. at 1366-68. The plaintiff engaged in a sexual relationship with her social worker, and the victim discovered the emotional injury the relationship caused when she received counseling after a suicide attempt three years later. Id. at 1367. In this case, Sell was aware of the potential effects of his treatment, and he litigated these matters extensively. The district court did not find that Sell was unaware of the nature and cause of his injury such that he could not bring a timely claim, and thus Simmons does not apply.

tortious treatment ends, rather than when awareness of the injury begins. <u>Wehrman v. United States</u>, 830 F.2d 1480, 1483 (8th Cir. 1987). Determination of when tortious treatment ends is a factual finding that we review for clear error. <u>McCoy v. United States</u>, 264 F.3d 792, 795 (8th Cir. 2001).

The district court found that federal employees did not commit any tortious acts against Sell while he was housed at the Justice Center, and that the last time a federal employee directed Sell's medical care was on April 27, 2004.[3] The district court specifically noted that Sell failed to prove that the government directed his care at the Justice Center, or committed any negligent acts after Sell's transfer. These findings were well supported by the evidence, and not clearly erroneous.

Sell, however, argues that the district court's finding was in error because the government remained in "constructive control" of the staff at the Justice Center at least through November 19, 2004. Sell argues: (1) the Justice Center was not a medical facility with a psychiatrist on staff to quickly re-evaluate Sell; (2) the allegedly unprepared Justice Center relied upon the government's treatment plan ; (3) the government knew of the Justice Center's deficiencies in this regard when it transferred Sell; (4) and, therefore, the government was in constructive control of the treatment that occurred at the Justice Center.

Sell is correct that the government's duty of care to a prisoner does not necessarily end when a prisoner is transferred to an independent contractor. <u>Logue v. United States</u>, 412 U.S. 521, 532-33 (1973). In <u>Logue</u>, a suicidal prisoner was transferred without "specific arrangements . . . for constant surveillance," and he later

---

[3]The district court's memorandum and order stated, "Although Sell's *injury* may have continued during his time at the Justice Center, the last act where a federal employee directed Sell's medical treatment occurred on April 27, 2008." D. Ct. Order of October 3, 2008, at 9. It is clear from the record and the context that the court meant April 27, 2004.

hanged himself.  <u>Id.</u>  The Court remanded the case for consideration of the government's liability resulting from the arresting officer's negligence.  <u>Id.</u>  But <u>Logue</u> is inapposite because the government made "specific arrangements" for Sell's transfer.  The government provided a medical summary to the Justice Center that listed Sell's mental illnesses, and the Justice Center knew of Sell's ailments.  Sell was able to see a psychiatrist while there, and the Justice Center had the ability to continue treatment of the mental illnesses noted in Sell's medical summary.  Although the Justice Center did not have psychiatrists on staff, it regularly retained outside psychiatrists to evaluate prisoners.  The Justice Center was free to re-evaluate Sell after his arrival and change his treatment plan, as it did in November 2004.  As the district court found, the government was not involved in Sell's treatment after he arrived at the Justice Center, and any tortious conduct by the government ended in April 2004.  The transfer itself was not negligent, and the evidence did not support a finding of constructive control.  Thus, the district court's finding that the continuous treatment exception did not apply is not clearly erroneous.

III.

The judgment is affirmed.

_____